DECISION AND JUDGMENT ENTRY
{¶ 1} Jerry M. Rucker and the estate of Ruth Ann Rucker ("The Ruckers") appeal the Ross County Court of Common Pleas' grant of partial summary judgment to The Travelers' Indemnity Company of Illinois ("Travelers").[1] The Ruckers argue that the trial court erred in determining that the general commercial liability insurance policy ("GCL" policy) at issue is not a motor vehicle policy subject to the requirements of former R.C. 3937.18. Because we find that the policy provides liability coverage arising from the use of automobiles, we agree. Travelers argues that the Ruckers are not entitled to uninsured/underinsured motorist coverage ("UM/UIM coverage") even if the policy is a motor vehicle policy because the GCL policy is a form of self-insurance, which is not subject to the requirements of former R.C.3937.18. Because we find that the GCL policy is practical self-insurance, we agree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} Jerry M. Rucker, personally and as executor of the estate of Ruth Ann (Monk) Rucker, filed a complaint against James A. Davis, Jr. ("Davis Jr."), James A. Davis, Sr. ("Davis, Sr."), Progressive Preferred Insurance Company ("Progressive") and Travelers. The complaint alleged that Mr. Rucker was seriously hurt and his wife, Ruth Ann Rucker, died in an accident on July 16, 2000. The complaint alleged that Davis Jr. negligently operated a motor vehicle owned by Davis Sr. into a motorcycle owned and operated by Mr. Rucker and occupied by Mrs. Rucker. The complaint also alleged that Davis Sr. negligently entrusted the vehicle to Davis Jr.
 {¶ 3} According to the complaint, Progressive insured Mr. Rucker at the time of the accident and Travelers insured Mr. Rucker's employer, Mead Corporation, under an automobile insurance policy. The complaint alleged that these policies provided underinsured motorist coverage under which the Ruckers were entitled to collect damages.
 {¶ 4} The complaint contained claims for: (1) Mr. Rucker's personal injuries, (2) Mrs. Rucker's personal injuries, (3) Mrs. Rucker's wrongful death, (4) Mr. Rucker's loss of consortium, (5) a declaratory judgment as to Progressive's insurance coverage, and (6) a declaratory judgment as to Travelers insurance coverage.
 {¶ 5} All the defendants answered. Progressive cross-claimed against the other defendants. It sought a full judgment against Davis Sr. and Davis Jr. in the event that any judgment is entered against it. As to Travelers, Progressive asserted that Travelers was the primary underinsured coverage to the Ruckers and sought indemnity and/or contribution for any judgment against Progressive.
 {¶ 6} In February 2002, the trial court granted the Ruckers' motion to amend their complaint to allege that Mead had two insurance policies with Travelers: the auto liability policy and a "GCL" policy.
 {¶ 7} On March 15, 2002, the Ruckers sought summary judgment against Travelers.[2] They relied upon the pleadings, the deposition of Mead's director of corporate risk management and insurance, Terrance A. Reiff, and the relevant insurance policies issued to Mead. The Ruckers argued that they were entitled to underinsured motorist coverage pursuant to Mead's policies with Travelers.
 {¶ 8} On March 15, 2002, Travelers sought summary judgment. It argued that: (1) because Mead is a self-insurer, in the "practical sense," Travelers was not required by R.C. 3937.18 to offer uninsured and/or underinsured motorists coverage ("UM/UIM coverage"); (2) Mead unequivocally rejected UM/UIM coverage; (3) the Ruckers were not "insureds" under the policy, (4) the Commercial General Policy is not a motor vehicle policy.
 {¶ 9} In March 2002, Progressive dismissed, without prejudice, its cross-claims against Davis Sr. and Davis Jr. In May 2002, the Ruckers dismissed, with prejudice, their claims against Davis Sr. and Davis Jr. pursuant to a settlement agreement.
 {¶ 10} In June 2002, the trial court determined that: (1) the Progressive policy unambiguously limits each plaintiff to $100,000 per person, (2) That Progressive is not entitled to a $50,000 reduction towards the amount of underinsurance motorist coverage it must provide, and (3) that "Progressive is entitled to a $50,000 setoff from the tortfeasor's per person limit as to Jerry Rucker, Executor of the Estate of Ruth Rucker" because of expenses incurred by wrongful death settlements in probate court.
 {¶ 11} In June 2002, the trial court granted in part and denied in part the Ruckers' motion for summary judgment against Travelers. In its analysis, the trial court ruled that the Ruckers are entitled to underinsured motorist coverage under the Business Auto policy issued by Travelers. In so doing, the trial court determined that Mead did not legally reject UI/UIM coverage. The trial court also ruled that Mead's GCL policy was not a motor vehicle policy of insurance as defined by former R.C. 3937.18 and that the Ruckers did not meet the definition of insureds under the policy.
 {¶ 12} The Ruckers appeal[3] and assert the following assignment of error: "The trial court erred to the prejudice of the [Ruckers], by holding that [Travelers' GCL policy] is not a `motor vehicle liability insurance policy' subject to the UM/UIM mandates of R.C. 3937.18."
 {¶ 13} Travelers asserts the following cross-assignment of error to be considered only to prevent a reversal of the judgment on appeal: "The trial court erred in declaring that the Mead GCL policy was not a form of self-insurance, exempt from Ohio's UM/UIM statute."
 II. {¶ 14} In their only assignment of error, the Ruckers assert that the trial court erred in granting summary judgment to Travelers on the basis that the GCL policy is not a "motor vehicle liability insurance policy" and, therefore, not subject to the requirements of former R.C.3937.18's requirements concerning UM/UIM coverage.
 {¶ 15} Summary judgment is appropriate when the court finds that the following factors have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed in his or her favor. Civ.R. 56. See Bostic v. Connor (1988), 37 Ohio St.3d 144, 146; Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Morehead v.Conley (1991), 75 Ohio App.3d 409, 411. "In reviewing the propriety of summary judgment, an appellate court independently reviews the record to determine if summary judgment is appropriate. Accordingly, we afford no deference to the trial court's decision in answering that legal question." Morehead v. Conley, 75 Ohio App.3d at 411-12. See, also,Schwartz v. Bank One, Portsmouth, N.A. (1992), 84 Ohio App.3d 806, 809.
 {¶ 16} The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment. Dresher v.Burt (1996), 75 Ohio St.3d 280, 294, citing Mitseff v. Wheeler (1988)38 Ohio St.3d 112, 115. The moving party bears this burden even for issues that the nonmoving party may have the burden of proof at trial.Id. "However, once the movant has supported his motion with appropriate evidentiary materials, the nonmoving party may not rely upon the allegations and/or denials in his pleadings. * * * He must present evidentiary materials showing that a material issue of fact does exist."Morehead v. Conley, 75 Ohio App.3d at 413.
 {¶ 17} We apply identical standards of interpretation to insurance contracts as we do to other written contracts. Hybud Equip. Corp. v.Sphere Drake Ins. Co., Ltd. (1992) 64 Ohio St.3d 657, 665. We must give the language of an insurance policy its plain and ordinary meaning.Dairyland Ins. Co. v. Finch (1987), 32 Ohio St.3d 360, 362. Only when an insurance contract is ambiguous and susceptible of more than one interpretation, must we liberally construe the language in favor of the claimant seeking coverage. Id. We review the interpretation of insurance contracts de novo. Nationwide Mut. Fire. Ins. Co. v. Guman Bros. Farm
(1995), 73 Ohio St.3d 107, 108.
 {¶ 18} Former R.C. 3937.18 mandated uninsured motorists coverage where "(1) the claimant is an insured under a policy which provides uninsured motorist coverage; (2) the claimant was injured by an uninsured motorist; and (3) the claim is recognized by Ohio tort law." Martin v.Midwestern Group Ins. Co. (1994), 70 Ohio St.3d 478, 481. R.C. 3937.18 is remedial legislation that we must liberally construe to effectuate the legislative purpose of protecting persons. Martin at 480. Because a party may not enter into contracts that are contrary to law, an insurance policy provision that does not conform to R.C. 3937.18 is void. Id. "Where motor vehicle liability coverage is provided, even in limited form, [UI/UIM] coverage must be provided." Selander v. Erie Ins. Group (1999),85 Ohio St.3d 541, 544; 1999-Ohio-287.
 {¶ 19} Former R.C. 3937.18 provided[4]: "(L) As used in this section, "automobile liability or motor vehicle liability policy of insurance" means either of the following: "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance; (2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section."
 {¶ 20} In Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541,544-545, the Ohio Supreme Court determined that a commercial general liability policy that provided coverage for non-owned and hired motor vehicles is a motor vehicle policy and, therefore, must comply with the requirements of former R.C. 3937.18.
 {¶ 21} The Ohio Supreme Court was asked to extend Selander's reasoning to homeowner's insurance policy in Davidson v. Motorists Mut.Ins. Co. (2001), 91 Ohio St.3d 262, 2001-Ohio-36. The Court declined to do so. In so doing, the Court provided a framework for analyzing whether a particular insurance policy is a "motor vehicle policy" subject to former R.C. 3937.18. First, the court must look at the language of the insurance policy itself. Davidson at 264. Next, the court must determine whether the policy, like the policy in Selander, has "express liability coverage arising from the use of automobiles," or provides "incidental coverage" to motorized vehicles Id. at 268. In making this determination, the court must keep in mind that (1) coverage of motorized vehicles does not automatically convert the policy into a "motor vehicle policy," Id. at 268, and (2) the General Assembly intended the requirement for UM/UIM coverage to apply "only to policies that insure against liability arising from the ownership or operation of `vehicles' that can be used for transportation on the highway." Davidson at 269, citing DelliBovi v. Pacific Indemn. Co. (1999), 85 Ohio St.3d 343, 345.
 {¶ 22} In Davidson, the Court also limited Selander by finding that "Selander stands only for the proposition that UM/UIM coverage is to be offered where a liability policy of insurance expressly provides for coverage for motor vehicles without qualification as to design or necessity for motor vehicle registration." Id. at 268.
 {¶ 23} Here, the Ruckers argue that the GCL policy is converted into a motor vehicle liability policy by the following provisions. The policy provides that it does not apply to "g. Aircraft, Auto or Watercraft" and explains that this exclusion does not apply to: "(3) parking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured; * * * (5) `bodily injury' or `property damage' arising our of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of `mobile equipment.'" These definitions provide: "(2) Cherry pickers and similar devises * * *; and (3) Air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment."
 {¶ 24} We begin our analysis by finding that vehicles described in part (5) of the above quoted policy language are not the type of motor vehicles that can be used for transportation on the highway. Thus, coverage for these types of vehicles provides only "incidental coverage" to motorized vehicles.
 {¶ 25} Next, we turn our attention to part (3), the inclusion of "parking an auto" that is not owned by, rented or loaned to the insured. While the inclusion of coverage of motor vehicles does not automatically convert a policy into a motor vehicle policy, we cannot find that this provision provides merely incidental coverage of an auto. In this context, the term "parking" is slightly ambiguous. It could mean the act of parking an auto on the insured's premises, e.g., an employee valet parking a customer's car; or it could mean an auto that is parked on an insured's property. Because we must liberally construe ambiguous language in favor of the claimant, we find that this provision provides liability coverage arising from the use of automobiles. Thus, the GCL policy is a motor vehicle policy.
 III. {¶ 26} Because we have found that the GCL policy is a motor vehicle policy, we turn to Travelers' cross-assignment of error. Travelers asserts that former R.C. 3937.18's requirements that insurers offer uninsured/underinsured motorist coverage is not applicable to the policy because it is a form of self-insurance.
 {¶ 27} Travelers issued the GCL policy to Mead. The policy had a two million dollar limit and had a two million dollar deductible. An endorsement to the policy requires Mead to reimburse Travelers, among other things, for all amounts paid to settle a claim or lawsuit within the policy's coverage. This includes attorneys fees and court costs.
 {¶ 28} The Ruckers argue that Mead is not self-insured. They point out that if Mead becomes bankrupt or insolvent, Travelers is obligated to provide insurance coverage.
 {¶ 29} Self-insurers do not need to comply with former R.C.3937.18's mandatory offering of uninsured/underinsured motorist coverage. Musser v. Musser (March 19, 2003), Adams App. No. 02CA750,2003-Ohio-1440, citing Grange Mut. Cas. Co. v. Refiners Transp. Terminal Corp. (1986), 21 Ohio St.3d 47, at the syllabus. In Musser, we determined that R.C. 3937.18 does not apply to practical self-insurers. We see no reason to depart from this determination.[5]
 {¶ 30} In Musser, we also held that to determine "whether an entity is self-insured in a practical sense, courts look at who bears the risk of loss." The insurance policy in Musser had an identical liability limit and deductible, one million dollars, and contained a bankruptcy clause stating that the insurance company remained liable even if the insured became bankrupt or insolvent. In Musser, we held that the insured bore the risk of loss given the identical limit of liability and deductible even with the bankruptcy clause because the insured remained liable under the policy even in the event of bankruptcy or insolvency.
 {¶ 31} Here, the insurance policy's liability limit and deductible are identical, two million dollars, and has a bankruptcy clause where the insured remains liable even if Mead becomes bankrupt or insolvent. Thus, our reasoning in Musser is applicable here and we find that Mead is self-insured in the practical sense.
 {¶ 32} Because Mead is self-insured in the practical sense, R.C.3937.18 is not applicable and Travelers had no obligation to offer Mead uninsured/underinsured motorist coverage. Thus, we sustain Traveler's cross-assignment of error.
 IV. {¶ 33} In conclusion, although the trial court erred in finding that the GCL policy was not a motor vehicle policy, we affirm its judgment because the Ruckers are not entitled to UM/UIM coverage under the GCL policy. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Evans, P.J. and Abele, J.: Concur in Judgment and Opinion.
[1] In August 2002, we consolidated Ross App. Nos. 02CA2670, 02CA2673, 02CA2676, and 02CA2677 for purposes of filing of the record, briefing, oral argument and decision. We now vacate the part of that order that consolidated these cases for purposes of decision.
[2] On March 15, 2002, the Ruckers also sought summary judgment against Progressive, which the trial court granted in part and denied in part, and which Progressive and the Ruckers separately appealed to this court in case numbers 02CA2670 and 02CA2676 respectively.
[3] Travelers also appealed the trial court's grant of partial summary judgment to the Ruckers in case number 02CA2673.
[4] This section has been amended since the date of the accident at issue. Those amendments are not relevant here. Selander v. Erie Ins.Group (1999), 85 Ohio St.3d 541.
[5] We acknowledge that other courts have reached the opposite conclusion. See, e.g., Tucker v. Wilson (Sep. 30, 2002), Clermont App. No. CA2002-01-002, 2002-Ohio-5142; Dalton v. Wilson (Aug. 8, 2002), Franklin App. No. 01-AP-014, 2002-Ohio-4015. In Musser, we welcomed the possibility of the Ohio Supreme Court resolving these conflicting decisions. We reiterate our invitation for the parties to file a motion to certify a conflict on this issue.